JOHN M. BACH, APPELLANT, v. GEORGE W. BROWN, RESPONDENT.

1. *Constitutional Law—Venue—Jurisdiction.*
    Under the constitution (article 8, § 5), all actions, civil and criminal, must be commenced and tried in the county in which the causes arise, unless a change of venue be taken, after suit brought in the proper county, in such cases as may be provided by legislative enactment.

2. *Same—Promissory Note.*
    Where a promissory note is executed and delivered in one county, made payable in another, and a failure of payment occurs, the cause of action arises in the county in which the instrument is made payable, and suit must be brought there.

3. *Promissory Note—Time and Place of Payment.*
    The time and place of payment in a promissory note are material stipulations in the contract.

4. *Cause of Action—When Arising.*

> Whenever a breach of contract occurs, whether by commission or omission, the cause of action arises; and when the contract is to be performed at a place stipulated, the act of omission, which is the groundwork of the complaint, will be regarded as having occurred at that place.

5. *Statute—Invalidity of.*

> Chapter 93, Sess. Laws 1896, in so far as it authorizes the bringing of an action upon a contract in a county where the defendant resides, when such contract, by stipulation therein, is to be performed in another, is in conflict with section 5 of article 8 of the constitution, and is void.

(Decided June 16, 1898.)

Appeal from district court, Salt Lake county; A. N. Cherry, *Judge.*

Action by George W. Brown against John M. Bach on a promissory note. Plaintiff had judgment, and defendant appeals. *Reversed.*

*Frank Pierce,* for appellant.

*L. L. Baker* and *Baskin and Hoge,* for respondent.

BARTCH, J.:

This action was commenced in the district court of Tooele county to recover a certain sum alleged to be due on a promssory note. The defendant demurred to the complaint on the grounds that it failed to state a cause of action, and that it appeared on its face that the court had no jurisdiction. The demurrer was overruled, and the defendant failing to answer, judgment was entered against him.

The decisive question presented, on his appeal from the judgment, is whether the court had jurisdiction to try the

cause. The note set out in the complaint appears to have been executed by the defendant to the plaintiff at Clifton mining district, Tooele county, Utah, November 25, 1896, and was made "payable at Salt Lake City, Utah." In view of the fact that the note was made payable at Salt Lake City, which is in Salt Lake county, the appellant insists that the suit was improperly instituted in Tooele county, and that it should have been brought in Salt Lake county, where the breach of the note or contract occurred by failure to pay, relying on section 5 of article 8 of the constitution. In that section it is provided: "All civil and criminal business arising in any county must be tried in such county, unless a change of venue be taken, in such cases as may be provided by law." This provision was construed in *Konold* v. *Railway Co.*, 16 Utah, 151; and we there held: "The word 'business' was used as a general term to include causes of action and all other business which might arise in any county, and the manifest intention was that all suits, civil and criminal, should be brought, and the cases tried, in the county in which the causes of action arose, unless a change of venue should be taken in such cases as might be provided by law. The last clause of the provision confers upon the legislature discretionary power to provide for a change of venue in cases where that body may deem it necessary, but even in this class of cases the legislature has no power to authorize an action to be brought, in the first instance, in any other county than the one in which the cause arose." The important question, therefore, is, where did the cause of action arise? The appellant contends that it arose in Salt Lake county, where the failure to pay which caused a breach of contract, occurred; while the respondent insists that, upon the default of the obligor, his obligation to pay at Salt Lake City was broken, and could not afterwards

ever be performed," but that the obligation continued to exist, and accompanied him into every jurisdicton in which he might go, and that each day on which he neglected to pay after maturity he was guilty of a "new breach," and gave rise to a new cause of action against him in each jurisdiction in which such breach occurred; and that the action was properly brought in Tooele county. We cannot assent to the correctness of the views of the respondent. In reference thereto it may be asked, why did not the breach continue to exist, the same as the obligation? and why limit the new breach to each day, instead of each hours, week, month, or other period of time? It is also difficult to understand why the obligor could not perform the condition to pay at Salt Lake City, and avoid the effects of the breach, at any time before suit brought, especially if it were true, as insisted by counsel for the respondent, that "time and place of payment in the terms of a promissory note are not of the essence of the contract." Evidently in every note or contract the time and place of performance are matters that may be arranged between the parties, and may be so stipulated as best to suit their convenience. Since, therefore, the place of payment of the note in this case was stipulated to be at Salt Lake City, it is fair to infer that it was done for their mutual accommodation, or, possibly, at the instance of one or the other of the parties, for his convenience Whatever may have been the reason for the stipulation, it is a material part of the contract, and it made it the duty of the obligor, at maturity of the note, to pay at the place designated. The obligation in itself created no cause of action. It existed before maturity as well as after, and yet no one would claim that the payee had a right to sue before maturity of the note. This being so, then a cause of action could not have arisen until the

promisor had refused or omitted to do his duty, as he had agreed, which was to pay the note at maturity at Salt Lake City.

"Cause of action," in the sense here indicated, is synonymous with "right of action," and includes the omission or act without which no right of recovery could exist. In this case it includes the omission which constituted the violation of duty agreed to be discharged, and arose at the time when and place where that duty was to be discharged. When a thing is done which ought not to have been done, or when a thing is not done which ought to have been done, a cause of action arises, and such doing or omitting to do forms the basis of the action; and, while the contract constitutes necessary evidence to establish a right to recover, it does not constitute the thing which establishes the right to bring the action, although such thing must have been preceded by the contract. That which gives cause for complaint is the breach. Hence whenever the breach occurs, whether by commission or omission, the cause of action arises; and when the contract is to be performed at a place stipulated, the act or omission, which is the groundwork for complaint, will be regarded as having occurred at that place. "A cause of action is said to accrue to any person when that person first comes to a right to bring an action." Bouv. Law Dict. Cause of action is "the fact or combination of facts which gives rise to a right of action." Rap. & L. Law Dict. In Bliss, Code Pl. § 113, the author says: "We have defined an action to be a judicial proceeding for the prevention or redress of a wrong. The cause of action, then, is the wrong. In a given case, the second phrase at the head of this section includes the first, for there can be no cause of action aside from the facts which constitute it. The facts show a wrong committed or threat-

ened, and, unless they do so, there is no cause of action, or, in the language of the statute, 'the complaint [petition] does not state facts sufficient to constitute a cause of action.' The wrong may be done by the denial of a right or by the refusal to respond to an obligation, or it may arise from mere neglect in the performance of a duty, or it may be an affirmative injury." This section, as appears from their brief, was cited by counsel for the respondent to sustain the proposition that "the debt is the cause of action, rather than the wrong done the plaintiff by refusing to pay the debt at some particular place." Clearly, that section does not sanction such a proposition, for the author states in express terms that "the cause of action, then, is the wrong." This is in accord with the views hereinbefore expressed, and applies to transitory actions, like the one at bar, as well as other actions. A similar question to the one herein considered was before the court of appeals of New York in *Bank* v. *Lacombe*, 84 N. Y. 367, where a check was drawn by bankers in New Orleans upon New York bankers. Payment was refused by the payees, and the court, holding that the refusal created a cause of action arising in New York, said: "We conclude, therefore, that the cause of action in the case before us arose when the draft, by its terms, was payable, when payment was refused and notice given. These things constitute a cause of action, and it has arisen within this state." So, in *Durham* v. *Spence*, L. R. 6 Exch. 46, the question arose under 15 & 16 Vict. c. 76, § 18, which enacts that, in case any defendant, being a British subject, is residing out of the jurisdiction of the superior courts, "it shall be lawful for the court or judge, upon being satisfied by affidavit that there is a cause of action which arose within the jurisdiction," etc., and the court held that the cause of action meant the act or omission

constituting the violation of duty complained of, and not the whole cause of action. In deciding the question, Pigott, B., said: "What, then, did the legislature mean when it spoke of the cause of action arising in England? Did it mean what has been termed the 'whole cause of actions;" is that both the contract and the breach? I think that is not the true construction. I understand by cause of action that which creates the necessity for bringing the action. No doubt, to make the act or omission complained of a cause of action, a contract must have preceded, but so also a negotiation must have preceded the making of the contract. Yet I should not include in the expression 'cause of action' that negotiation, nor any of the other circumstances that might form part of the necessary evidence in the cause as the groundwork of the cause of complaint, but only the cause of complaint itself, that is, the breach;" and then adds: "We are not justified in introducing into the section a word not found there, and saying that when the legislature says 'cause of action' it means 'whole cause of action,' and not that which the words used naturally express, namely, the fact which gives rise to the action." Cleasby, B., said: "I cannot avoid the conclusion that a cause of action arises where that takes place which first makes a cause of action. The contract does not make a cause of action; but a cause of action does arise when and where the person who has entered into the contract does or omits to do that which gives a cause of action. But the whole cause of action in the sense which makes it include both the contract and the breach arises nowhere."

In *Hosley* v. *Insurance Co.*, 86 Wis. 463, respecting the same question, it was observed: "It was the default in payment within the ninety days which made the cause of action perfect. Prior to this default, an action would

have been premature. This default took place in La Crosse county, because by the contract and by-laws of the company the check was to be delivered to the beneficiaries, and, as they were continuously residents of La Crosse, that delivery was to take place in La Crosse county." So, in *Maxwell* v. *Railroad Co.*, 34 Fed. 286, Mr. Justice Brown, says: "I am clearly of the opinion that the cause of action arises, not where the contract is made, but where it is broken; and that, as the expulsion of the plaintiff took place in the State of Kansas, the cause of action must be deemed to have arisen there." 3 Am. & Eng. Enc. Law, p. 46, and note: 2 Daniel, Neg. Inst. § 1213; 2 Kent, Comm. 460; *United States Graphite Co.* v. *Pacific Graphite Co.*, 68 Fed. 442; *Jackson* v. *Spittall*, L. R. 5 C. P. 542; *Bruill* v. *Association*, 72 Wis. 430; *Lammers* v. *Floyd*, 11 Tex. Civ. App. 473; *President, etc. of Bank of Commerce* v. *Rutland & W. R. Co.*, 10 How. Prac. 1; *Howell* v. *Young*, 5 Barn. & C. 259; *Parker* v. *Enslow*, 102 Ill. 272; *Graham* v. *Scripture*, 26 How. Prac. 501; *Meyer* v. *Van Collem*, 28 Barb. 230; *McKerras* v. *Gardner*, 7 Johns. 137; *Lee* v. *Selleck*, 33 N. Y. 615; *Burckle* v. *Eckhart*, 3 N. Y. 132.

Counsel for the respondent cited Wallace v. McConnell, 13 Pet. 136, but it does not militate against the principles hereinbefore stated. Mr. Justice Thompson, delivering the opinion of the court, said: "The place of payment in a promissory note, or in an acceptance of a bill of exchange, is always matter of arrangement between the parties for their mutual accommodation, and may be stipulated in any manner that may best suit their convenience." Unquestionably, this is the law, and is just what was done by the parties in this case. They stipulated in the note that it should be paid at a certain place, but the promisor failed to do so, and this fact is admitted.

Therefore immediately upon such failure the breach occurred, the wrong was done, and the cause of action then and there arose; and under the mandate of the constitution the action must be commenced where the cause arose. It is true, under the former practice, before statehood, a transitory action, like the one at bar, could be brought where the defendant resided, but that practice no longer exists in this state. The people in their sovereign capacity, by their fundamental law, have ordained otherwise, and neither by interpretation nor legislative enactment can the old practice be restored. Sess. Laws 1896, c. 93, in so far as it authorizes the bringing of an action upon a contract in the county where the defendant resides, when such contract, by stipulation therein, is to be performed in another, is in conflict with Const. art. 8, § 5, and is void.

From the foregoing considerations, we are of the opinion that the cause of action in this case arose in Salt Lake City and county where the note was made payable, and that the suit was improperly brought in Tooele county. The case must therefore be reversed and remanded, with direction to the court below to dismiss the action. It is so ordered.

ZANE, C. J., and MINER, J., concur.